IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IOU CENTRAL, INC. <br> d/b/a IOU FINANCIAL, INC., <br><br> Plaintiff, <br><br> vs. <br><br> VOLTATA TP ACQUISITION, LLC, <br> d/b/a TRANS PECOS ELECTRIC; <br> CURRENT ELECTRIC, INC.; <br> JULIE JOHNCOX SIGLINGER; <br> JPFI, LLC a/k/a JP SOLUTIONS; and <br> TAMMY SHAKLEE, INDIVIDUALLY <br> AND AS TRUSTEE OF THE TAMMY <br> SHAKLEE TRUST, <br><br> Defendants. | § § § § § § § § § § § § § § § § § | CASE NO: 4:20-cv-1181 |

## **COMPLAINT**

Plaintiff IOU sues the Defendants:

1. Plaintiff IOU is incorporated in Delaware, whose principal place of business is located in Georgia and is a citizen of both states per 28 U.S.C. § 1332.

2. Defendant Voltata [Business] is a limited liability company, dissolved on 8/2/19, whose members are Paul Siglinger [Debtor] and Defendant Shaklee, identified by Debtor as his domestic partner and business partner, who are domiciled in and citizens of Texas per § 1332.

3. Defendant Siglinger [JJS] is domiciled in and a citizen of Texas, the sole member of Defendant JPFI, LLC, a/k/a JP Solutions [JPFI], an insider of Business and Electric.

4. Relief is not sought as to Paul Siglinger, who filed Chapter 7 Bankruptcy on 10/14/19, discharged 1/5/20, E.D. Tex. Case No. 19-42813, in which Defendants cannot obtain relief as to this case. ***In re Divine***, 538 B.R. 300, 308-09 (Bankr. S.D. Tex. 2015).

1

5. Per 28 U.S.C. § 1332, jurisdiction exists as to the diverse parties and the sum in controversy exceeds $76,000.00 per the value of the relief from plaintiff's perspective, with attorney's fees. ***Jones v. Landry***, 387 F.2d 102 (5th Cir. 1967). The object of this litigation is damages and/or equitable relief on property valued in excess of $76,000. ***Groves v. Rogers***, 547 F.2d 898, 900 (5th Cir. 1977); ***Waller v. Prof.***, 296 F.2d 547 (5th Cir. 1961). Per U.S.C. § 1367, jurisdiction exists on all claims.

6. Under 28 U.S.C. § 1391 and § 124, venue is proper as Defendants reside in this District; a substantial part of the events or omissions giving rise to the claims occurred here; the property at issue is located in this District, who otherwise conduct business here.

7. On 8/14/15, Debtor organized Business as the holding company for Current Electric, using his residence of 6421 Fershaw Place, Fort Worth Texas [Fershaw Property] as their office of which he is the president and director of both companies.

8. Defendant Shaklee is a co-owner and an insider of the Business from 2016-2019.

9. Defendant JJS and Debtor are married, own and reside in the Fershaw Property valued in excess of $400,000, described as Hampton Place, Fort Worth Lot 29R, Tarrant County.

10. JJS and Debtor owned 5428 Helmick Ave., Fort Worth, TX, Lots 25-26, Block 120 Chamberlain, Arlington Hts, 2nd, Tarrant County, valued over $140,000 [Helmick Property].

11. On 5/17/17, JJS organized JPFI, LLC with the Texas Secretary of State as a business management consulting company, which is also operated from the Fershaw Property.

12. JJS and JPFI did business development and marketing for Current Electric, of which they are insiders:  http://www.jp-solutions.org/business-development-current-electric-inc.

13. JJS is or was an insider of Debtor and Business at least during 2017-2019.

14. On 5/21/18 <u>Debtor/JJS</u> conveyed the Helmick Property to JPFI by a Deed recorded by them that day, Tarrant Doc. No. D218108941, which they owned since 2009.

15. Debtor/JJS conveyed the Helmick Property to JPFI, without valid consideration, to avoid its attachment by Debtor's creditors, such as IOU, which would not be immediately visible.

16. On <u>6/14/18</u>, Debtor submitted a Loan Application to IOU's Georgia office website, for a commercial loan [Loan] for all Defendants, with ownership or other interests in Business, who benefitted from, consented to and ratified the Loan.

17. On <u>6/21/18</u> [Closing Date] Debtor executed a Promissory Note for the Business to IOU for a gross loan amount/principal of <u>$161,250</u>, at IOU's Georgia office website, in exchange for its Funds, with a loan guaranty fee, confirming all information, consenting to Georgia law, of which Defendants benefitted, consented and ratified: obtaining the Funds.

18. The Note is in default if (i) any amount due pursuant to the Note is not received by IOU when due (ii) Business breaches any warranty, representation, covenant, term or condition of the Note (iii) default under any guaranty agreement or instrument, now existing, after committed or made, provided to IOU to enhance the Loan's credit underwriting; any bankruptcy, insolvency or receivership proceeding is commenced by or against Business and not dismissed within 30 days (iii) Business ceases to exist or (iv) obtains another loan during the term of the Loan without IOU's prior written permission [Note ¶ 6].

19. The Note includes a Security Agreement, by which Debtor and Business, recipients of the Funds, were to encumber their property, proceeds and assets as collateral for the Loan, upon which IOU relied in approving the Loan, of which Defendants, consented, benefitted and ratified as co-recipients of the funds, which states:

> As security for the due and punctual payment of all amounts due or to become due and the performance of all obligations of Borrower from time to time under

this Note and all extensions, renewals and amendments of any of the foregoing Borrower hereby pledges, transfers, assigns, conveys and grants a security interest to a continuing lien upon and security interest in and to all of Borrower's now owned or hereafter acquired, created or arising property including any right, title or interest in or to property of any kind whatsoever, whether real, personal or mixed, and whether tangible or intangible, and in each case regardless of where such Property may be located and whether such Property may be in the possession of Borrower, Lender or a third party and shall include any right, title or interest in or to property of any kind whatsoever, whether real, personal or mixed, and whether tangible or intangible and (1) any and all amounts owing to Borrower now or in the future from any merchant processor(s) processing charges made by customers of Borrower via credit card or debit card transactions: and (2) all other tangible and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) investment property, including certificated and uncertificated securities, securities accounts, security entitlements, commodity contracts and commodity accounts, (d) instruments, including promissory notes, (e) chattel paper, including tangible chattel paper and electronic chattel paper, (f) documents, (g) letter of credit rights, (h) accounts, including health care insurance receivables, (i) deposit accounts, (j) general intangibles, including payment intangibles and software, and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The collateral includes all accessions, attachments, accessories, parts, supplies and replacements for the collateral, all products, proceeds and collections.  [Note ¶ 20]

20. On or about the Closing Date, Debtor electronically executed a Guaranty of the Note, at IOU's Georgia office website, guaranteeing the Note and Security Agreement and agreed to Georgia law, of which Defendants consented, benefitted and ratified as co-guarantors.

21. Per the Guaranty, Debtor granted and/or intended to grant the same security interest in his property, proceeds and assets as Business to guaranty the Note/Security Agreement, of which Defendants consented, benefitted and ratified, with the same security interest in their property, assets and proceeds.

22. The Guaranty provides for its enforcement against Debtor if Business defaults on its obligations under the Note and Debtor fails to satisfy its obligations, which are unconditional, enforceable against Debtor's successors and assigns, to which Defendants consented, benefitted and ratified [Guaranty ¶¶ 1-3].

23. Per the Guaranty, Debtor must provide all financial information for himself and Business at IOU's request, which Defendants ratified [Guaranty ¶ 6].

24. On the Closing Date, Debtor executed a Debit Agreement with Business to IOU, authorizing Loan payments by their account to IOU's Georgia office, certifying its purpose and their account information, of which Defendants knew, consented, benefitted and ratified.

25. On the Closing Date, Debtor approved disbursement of the Funds, by IOU's Georgia office, of which Defendants consented, benefitted and ratified.

26. On the Closing Date, Debtor and Business received the Funds by wire from IOU's account into their account, of which Defendants consented, benefitted and ratified.

27. IOU intended its Loan as a secured interest in all property, assets and proceeds of the Fund's recipients, Defendants, to be repaid and would not have otherwise advanced them per the Guaranty, Note and Agreements [Instruments].

28. Defendants breached the Instruments just after receipt of the Funds which they never cured, failing to make payments, failing to provide financial information, which IOU accelerated due to the default, with Debtor filing bankruptcy in which he admitted the existence of the defaulted Loan, the transfer of the Property and Shaklee's involvement in the Business.

29. Debtor and Business did not intend to repay the Funds, which they did not disclose to IOU, who acted for each other and the other Defendants as to the Funds and the Loan of which Defendants knew, benefitted, consented and ratified.

30. Defendants are jointly and severally liable for the Loan/Instruments, by fulfillment of at least one of the below events with Debtor; who namely:

(a) Acted as agents for each other in obtaining the Loan and the Funds of which they knew, benefitted, consented and ratified.

(b) Operate as or are a partnership, for their same, related business; the Business in which they shared the benefits and liabilities including the Funds.

(c) Owned, operated/conducted Business, as their alter-ego, disregarding its entity, undercapitalizing it per their failure to repay the Loan, as well as other debts, using it as a conduit/instrumentality for personal affairs like obtaining the Fund/evading the Loan, share/co-mingle assets, finances, ownership, and offices

(d) Business lacks an existence separate from Defendants, per their unified interest or ownership, a mere subterfuge to avoid payment of IOU's debt, whose form should be justly disregarded and pierced, with full liability for damages/relief imposed upon them.

(e) Defendants assumed or are liable for the debts/liabilities at issue, the Loan, Instruments and claims, who have a debtor-creditor relationship with IOU.

31. IOU's Instruments attached to all property, assets and/or proceeds of Defendants, including but not limited to the following ones:

(a) The Helmick Property, described above, which is mentioned in the Guaranty.

(b) 10306 Broomflower Drive, Austin Texas 78739, described as Lot 7 Block C, Circle 3 Ranch, Phase C, Section 8, per a deed to Shaklee, Travis Deed No. 2004019420TR.

(c) Any UCC-1 by IOU on the Loan, to which all other property, assets, proceeds and interests of the Defendants are subject.

(d) Any property, proceeds and assets secured by other loans of Defendants, to which IOU is subrogated of which they ratified.

(e) Any Funds used to benefit any Defendant, also subject to the Loan.

(f) Any property, assets and proceeds of any Defendant.

32. Defendants did and/or conspired to negligently, knowingly and maliciously misrepresent or failed to disclose to IOU the following matters, contrary to their representations to IOU they would and could comply with the Instruments and satisfy the Loan, as follows:

(a) Their collective involvement with the Loan of which they all benefitted.

(b) They fraudulently induced IOU to close the Loan, which they did not intend to or could not perform, defaulting on the Loan just after the Closing, resulting in Debtor's Bankruptcy, which occurred when IOU sought to resolve the Loan default.

(c) Their intent to hinder, delay and defraud IOU from enforcing the Loan, such as transferring the Helmick Property to JPFI just prior to the Loan, which was not disclosed to IOU, which relied upon Debtor's ownership of this Property in closing the Loan.

(d) Business was operated from the Helmick Property, the intended Loan collateral, which they are estopped from disputing.

33. IOU justifiably and reasonably relied on the misrepresentations or omissions of Defendants as honest and accurate in the Loan process and Instruments, inducing and causing IOU to close the Loan and wire the Funds to them, which was damaged by their misconduct.

34. IOU held and/or owned the defaulted Instruments and claims at issue and had standing to enforce them before suit, their principal balance and/or value exceeding $76,000, with attorney's fees as provided by law and their terms.

35. Defendants induced or encouraged IOU to confer the Funds on them per the defaulted Instruments, which they did not intend to satisfy or could not satisfy, of which they benefitted, consented and ratified.

36. IOU provided the Funds to Defendants and/or their agents, expecting repayment, which they appreciated, knew, benefitted, consented and ratified.

37. Defendants knew of, accepted and retained the Funds, which they did not reject, should return or compensate, who are otherwise unjustly enriched by the Funds at IOU's expense, retaining the Funds and/or retaining their property, assets and/or proceeds absent IOU's intended senior interest(s) in them.

38. Defendants are indebted to IOU on the Instruments, with fees, costs and charges, of which their property, assets and proceeds are secured as collateral.

39. Defendants are liable for each other's acts and omissions as partners, servants, agents, successors, by command, in prosecution of, within their relationship, by which they jointly benefitted and/or ratified.

40. All conditions precedent to suit occurred, were fulfilled, waived and/or their occurrence and/or fulfillment was unnecessary and/or futile.

### COUNT I:  DECLARATORY, EQUITABLE AND RELATED RELIEF AS TO ALL DEFENDANTS

41. ¶¶ 7-40 are incorporated.

42. Defendants are jointly liable for the Funds, whose property, assets and proceeds, such as the above Properties, are subject to the Instruments, procured by their conspiracy but seek to wrongfully evade the Loan.

43. The inequitable or fraudulent misconduct of Defendants requires inclusion of them, their property, assets and proceeds from the Instruments, who induced IOU to make the Loan, to which they are subject.

44. The misconduct of Defendants permits them to wrongfully retain the Funds at IOU's expense, with their property, assets and proceeds, absent IOU's intended secured interest in them, for which IOU has no adequate legal remedy.

45. The Instruments are to bind all recipients and beneficiaries of the Funds, Defendants, whose property, assets and proceeds are to secure the Loan, who consented to, benefitted from and ratified the Loan, obtaining the Funds.

46. The Instruments are intended as and constitute a security interest in all property, proceeds and assets of Defendants, reasonably identified and described as collateral, of which they knew, consented, benefitted and ratified, for which equitable relief will not prejudice them.

47. Per 28 U.S.C. § 2201, *et seq.*, and applicable law, IOU requests the Court declare, establish and reform its Instruments to bind Defendants, jointly liable for the Loan, a security interest in their property, assets and proceeds, subrogated into any Prior Loans, grant just relief.

48. Alternatively, IOU demands judgment as to the Defendants for compensatory, consequential, special, nominal, punitive damages for their misconduct and all just relief.

### COUNT II:  BREACH OF INSTRUMENTS AND RELATED RELIEF AS TO ALL DEFENDANTS

49. ¶¶ 7-40 are incorporated.

50. Defendants consented to, benefitted from and ratified the Instruments, accepting the Funds, who are liable as co-guarantors and/or successors of Debtor under the Guaranty.

51. Defendants breached the Instruments, failed to make payments and did not otherwise comply with their terms, which are now due.

52. IOU accelerated the principal balance of its defaulted Instruments of which Defendants were given notice and/or notice was not required and/or is futile and the Instruments provide for payment of IOU's attorney's fees and costs.

53. Defendants are notified IOU may enforce and invoke the fees provisions of the Instruments against them, who will be indebted for IOU's fees/costs, unless all principal, interest and charges due under IOU's Instruments are paid within 10 days after service of this Complaint.

54. IOU demands judgment against Defendants for damages under the Instruments in the principal sum of at least $76,000.00, attorney's fees, interest, costs and all just relief.

### COUNT III: BREACH OF FIDUCIARY DUTY OF TRUST TO CREDITOR AND RELATED RELIEF AS TO DEFENDANTS

55. ¶¶ 7-40 are incorporated.

56. Business and Current Electric are presumed insolvent per their default on the Loan and other debts, was or in the zone of insolvency by the time of Debtor's Bankruptcy.

57. Debtor rendered Business and himself insolvent, incurring debt which they could not repay, such as paying JJS and JPFI and transferring the Helmick Property to JPFI.

58. Debtor owed fiduciary duties to creditors of the Business, such as IOU, as an officer and director of Business to conserve and manage its property, assets and proceeds in trust for the benefit of its creditors, such as IOU, at least after its insolvency, which he was not to convert or give away, precluding collection of IOU's debt, to benefit himself at IOU's expense.

59. Debtor breached his fiduciary duties to IOU by misusing the property, assets and proceeds of Business after its insolvency to preferentially benefit his interests, dishonestly, in bad faith by (a) paying himself from them for worthless services (b) paying JJS and JPFI for worthless services (c) transferring the Helmick Property to JPFI and bankrupting, precluding Business from satisfying its debts, such as the Loan (d) lying to IOU about the nature and extent of the debts of Business, to acquire the Funds, in violation of the Instruments, (e) also constituting fraudulent transfers per Tex. Bus. & Com Code § 24.005, to hinder, delay or defraud IOU in enforcing its Loan and (f) constructively fraudulent transfers per Tex. Bus. & Com Code § 24.006, leaving Business a shell incapable of satisfying its debts, such as the Loan.

60. Debtor's misconduct wrongfully precluding satisfaction of the Loan by Business, whose misuse of its property, assets and proceeds impaired IOU's Security Agreement in them.

61. The other Defendants knowingly participated in the breach of fiduciary duty, and misconduct of Debtor to the creditors of Business (a) to whom Debtor had a fiduciary duty (b) the other Defendants knew of Debtor's fiduciary duty and (c) knowingly participated in Debtor's breach of the fiduciary relationship, as Shaklee participated in Debtor's misconduct as his partner and an insider of Business, as did JJS and JPFI, who are also liable for this misconduct.

62. The misconduct of Defendants was fraudulent, malicious and grossly negligent, requiring relief to punish and penalize them and deter future misconduct.

63. Per Tex. Bus. & Com. Code § 24.001 *et seq.*, Tex. Civ. Prac. & Rem. Code § 41.001, *et seq.*, and applicable law, IOU demands compensatory, consequential, special, nominal and exemplary damages as to Defendants for their torts, its attorney's fees, costs, equitable remedies and all just relief.

### COUNT IV: QUANTUM MERUIT/UNJUST ENRICHMENT AND RELATED RELIEF AS TO DEFENDANTS

64. ¶¶ 7-40 are incorporated.

65. Defendants induced and/or encouraged IOU to confer the Funds upon them through Debtor and Business, of which they knew, benefitted, consented and ratified.

66. IOU provided the Funds to Defendants by Debtor and Business expecting repayment, of which they knew, benefitted, consented and ratified.

67. Defendants knew of and accepted the Funds which should be repaid, who are otherwise unjustly enriched by them at IOU's expense.

68. Defendants are indebted to IOU for the Funds.

69. IOU demands judgment against the Defendants for the Funds, costs and just relief such as its equitable remedies.

## COUNT V:  EQUITABLE LIEN/EQUITABLE MORTGAGE
## AND RELATED RELIEF AS TO DEFENDANTS

70.     ¶¶ 7-40 are incorporated.

71.     Defendants inequitably or fraudulently induced IOU to provide the Funds, and enter into the Loan, without intending to satisfy the debt, satisfaction of which they have wrongfully precluded, who participated in Debtor's misconduct.

72.     Defendants knew of, accepted and retained the Funds as a secured debt, who wrongfully retain their property, assets and proceeds, absent IOU's intended secured interest in them for which IOU has no adequate remedy.

73.     An equitable lien and/or mortgage to secure IOU's Loan is intended and implied on the property, assets and proceeds of Defendants to remedy their misconduct

74.     Per 28 U.S.C. § 2201, *et seq.*, and applicable law, IOU requests the Court declare and impose an equitable lien /mortgage on all property, assets and proceeds of Defendants, in a sum at least equal to the Loan, relating back to its execution/origination, grant just relief.

## COUNT VI:  CONSTRUCTIVE TRUST AND
## RELATED RELIEF AS TO ALL DEFENDANTS

75.     ¶¶ 8-40 are incorporated.

76.     The property, assets and proceeds of all recipients of the Funds, Defendants were to secure the Loan, per the Instruments, of which they knew, benefitted, consented and ratified but wrongfully preclude its performance.

77.     Defendants inequitably or fraudulently induced IOU to provide the Funds, and enter into the Loan, without intending to satisfy the debt, satisfaction of which they have wrongfully precluded, who participated in Debtor's misconduct.

78. Defendants knew of, accepted and retained the Funds but are unjustly enriched at IOU's expense by wrongfully retaining their property, assets and proceeds, absent IOU's interest(s) in them, which has no adequate remedy.

79. A constructive trust to satisfy the Instruments is implied on all property, assets and proceeds of Defendants, in which they can enjoy no beneficial interest contrary to equity.

80. Per 28 U.S.C. § 2201, *et seq.*, and applicable law, IOU requests the Court declare and impose a constructive trust on all property, assets and proceeds of Defendants, in a sum at least equal to the Loan, relating back to its execution/origination, grant just relief.

81. The Defendants are not minor(s), not adjudged incompetent; not in the military for the last 30 days, and not subject to protection per 50 U.S.C. § 3901.

Respectfully submitted this 26th day of October 2020.

> By:  */s/Paul G. Wersant*
> Paul G. Wersant
> Georgia Bar No. 748341
> 3245 Peachtree Parkway, Suite D-245
> Suwanee, Georgia 30024
> Telephone: (678) 894-5876
> Email: pwersant@gmail.com
> Attorney for Plaintiff IOU
> File No. 104230