IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| IOU CENTRAL, INC. § <br> d/b/a IOU FINANCIAL, INC., § <br> § <br> Plaintiff, § <br> § <br> vs. § <br> § <br> VOLTATA TP ACQUISITION, LLC, § <br> d/b/a TRANS PECOS ELECTRIC; § <br> CURRENT ELECTRIC, INC.; § <br> JULIE JOHNCOX SIGLINGER; § <br> JPFI, LLC a/k/a JP SOLUTIONS § <br> VOLTATA, LLC; § <br> § <br> Defendants, | CASE NO: 4:20-cv-1181-Y |

## AMENDED COMPLAINT

Plaintiff IOU sues the Defendants as follows:

1.  Plaintiff IOU is incorporated in Delaware, whose principal place of business is located in Georgia and is a citizen of both states per 28 U.S.C. § 1332.

2.  Defendant Voltata TP [Business] and Voltata LLC [VL] are limited liability companies, closed March 2019, whose members are Paul Siglinger [Debtor] and Clifton M. Mitchell [CMM] domiciled in and citizens of Texas, per § 1332, in which a non-membership interest is held by the Tammy Shaklee Trust. Defendant Current [CEI] is incorporated in and has its principal place of business in Texas, which is a subsidiary of VL, also closed in March 2019.

3.  Defendant Siglinger [JJS] is domiciled in and a citizen of Texas, the sole member of Defendant JPFI, a/k/a JP Solutions [JPFI], an insider of Business and Electric and Debtor.

4.  Relief is not sought as to Debtor, Paul Siglinger, who filed Chapter 7 Bankruptcy on 10/14/19, discharged 1/5/20, E.D. Tex. Case No. 19-42813, in which Defendants cannot obtain relief as to this case. ***In re Divine***, 538 B.R. 300, 308-09 (Bankr. S.D. Tex. 2015).

1

5. Per 28 U.S.C. § 1332, jurisdiction exists as to the diverse parties and the sum in controversy exceeds $76,000.00 per the value of the relief from plaintiff's perspective, with attorney's fees. ***Jones v. Landry***, 387 F.2d 102 (5th Cir. 1967). The object of this litigation is damages and/or equitable relief on property valued in excess of $76,000. ***Groves v. Rogers***, 547 F.2d 898, 900 (5th Cir. 1977); ***Waller v. Prof.***, 296 F.2d 547 (5th Cir. 1961). Per U.S.C. § 1367, jurisdiction exists on all claims.

6. Under 28 U.S.C. § 1391 and § 124, venue is proper as Defendants reside in this District; a substantial part of the events or omissions giving rise to the claims occurred here; the property at issue is located in this District, who otherwise conduct business here.

7. On 8/14/15, Debtor organized Business using his residence of 6421 Fershaw Place, Fort Worth Texas [Fershaw Property] as their office of which he is the president and director of both companies as well as VL, organized around that time, the parent company of CEI.

8. Defendant JJS and Debtor are married, own and reside in the Fershaw Property.

9. The Fershaw Property is valued in excess of $400,000.00, which described as Hampton Place, Fort Worth Lot 29R, Tarrant County.

10. JJS and Debtor owned 5428 Helmick Ave., Ft Worth, TX, Lots 25-26, Block 120 Chamberlain, Arlington Hts, 2nd, Tarrant County, valued over $140,000.00 [Helmick Property].

11. On 5/17/17, JJS organized JPFI, LLC with the Texas Secretary of State as a business management consulting company, which is also operated from the Fershaw Property.

12. JJS operates JPFI from the Fershaw Property, which conducts business development and marketing for CEI, a company entirely owned by Defendant VL, an affiliate of Business. http://www.jp-solutions.org/business-development-current-electric-inc.

13. JJS is or was an insider of Debtor, Business, CEI and VL at least during 2017-2019, for which she and JPFI also received transfers of funds from Debtor and Business.

14. On 5/21/18 Debtor and JJS conveyed the Helmick Property to JPFI by a Deed recorded by them that day, Tarrant Doc. No. D218108941, which they owned since 2009.

15. Debtor/JJS conveyed the Helmick Property to JPFI, without valid consideration, to avoid its attachment by Debtor's creditors, such as IOU, which would not be immediately visible.

16. On 6/14/18, Debtor submitted a Loan Application to IOU's Georgia office website, for a commercial loan [Loan] for all Defendants, with ownership or other interests in Business, who benefitted from, consented to and ratified the Loan.

17. On 6/21/18 [Closing Date] Debtor executed a Promissory Note for the Business to IOU for a gross loan amount/principal of $161,250.00, at IOU's Georgia office website, in exchange for its Funds, with a loan guaranty fee, confirming all information, consenting to Georgia law, of which Defendants benefitted, consented and ratified: obtaining the Funds.

18. The Note is in default if (i) any amount due pursuant to the Note is not received by IOU when due (ii) Business breaches any warranty, representation, covenant, term or condition of the Note (iii) default under any guaranty agreement or instrument, now existing, after committed or made, provided to IOU to enhance the Loan's credit underwriting; any bankruptcy, insolvency or receivership proceeding is commenced by or against Business and not dismissed within 30 days (iii) Business ceases to exist or (iv) obtains another loan during the term of the Loan without IOU's prior written permission [Note ¶ 6].

19. The Note includes a Security Agreement, by which Debtor and Business and all other recipients of the Funds, such as JJS and JPFI, were to encumber their property, proceeds and assets as collateral for the Loan, upon which IOU relied in approving the Loan, of which all

3

Defendants, consented, benefitted and ratified as co-recipients of the funds, which states:

> As security for the due and punctual payment of all amounts due or to become due and the performance of all obligations of Borrower from time to time under this Note and all extensions, renewals and amendments of any of the foregoing Borrower hereby pledges, transfers, assigns, conveys and grants a security interest to a continuing lien upon and security interest in and to all of Borrower's now owned or hereafter acquired, created or arising property including any right, title or interest in or to property of any kind whatsoever, whether real, personal or mixed, and whether tangible or intangible, and in each case regardless of where such Property may be located and whether such Property may be in the possession of Borrower, Lender or a third party and shall include any right, title or interest in or to property of any kind whatsoever, whether real, personal or mixed, and whether tangible or intangible and (1) any and all amounts owing to Borrower now or in the future from any merchant processor(s) processing charges made by customers of Borrower via credit card or debit card transactions: and (2) all other tangible and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) investment property, including certificated and uncertificated securities, securities accounts, security entitlements, commodity contracts and commodity accounts, (d) instruments, including promissory notes, (e) chattel paper, including tangible chattel paper and electronic chattel paper, (f) documents, (g) letter of credit rights, (h) accounts, including health care insurance receivables, (i) deposit accounts, (j) general intangibles, including payment intangibles and software, and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The collateral includes all accessions, attachments, accessories, parts, supplies and replacements for the collateral, all products, proceeds and collections [Note ¶ 20].

20.     On or about the Closing Date, Debtor electronically executed a Guaranty of the Note, at IOU's Georgia office website, guaranteeing the Note and Security Agreement and agreed to Georgia law, of which Defendants consented, benefitted and ratified as co-guarantors, including Defendants JJS and JPFI, who obtained and/or otherwise benefitted from at least a portion of those funds as insiders of the Business and/or VL or CEI upon information.

21.     Per the Guaranty, Debtor granted and/or intended to grant the same security interest in his property, proceeds and assets as Business to guaranty the Note/Security Agreement, of which Defendants consented, benefitted and ratified, with the same security interest in their property, assets and proceeds such as the Fershaw and/or Helmick Properties.

22. The Guaranty provides for its enforcement against Debtor if Business defaults on its obligations under the Note and Debtor fails to satisfy its obligations, which are unconditional, enforceable against Debtor's successors and assigns, to which Defendants consented, benefitted and ratified [Guaranty ¶¶ 1-3] including JJS and JPFI, Debtor's successors under the Guaranty.

23. Per the Guaranty, Debtor must provide all financial information for himself and Business at IOU's request, which Defendants ratified [Guaranty ¶ 6] including JJS and JPFI who are Debtor's successors under the Guaranty.

24. On the Closing Date, Debtor executed a Debit Agreement with Business to IOU, authorizing Loan payments by their account to IOU's Georgia office, certifying its purpose and their account information, of which Defendants knew, consented, benefitted and ratified.

25. On the Closing Date, Debtor approved disbursement of the Funds, by IOU's Georgia office, of which Defendants consented, benefitted and ratified including JJS and JPFI, Debtor's successors under the Guaranty, which they received that day.

26. IOU intended its Loan as a secured interest in all property, assets and proceeds of the Fund's recipients, Defendants, to be repaid the Funds and would not have otherwise advanced them per the Guaranty, Note and Agreements [Instruments], which include JJS and JPFI, Debtor's successors under the Guaranty.

27. Defendants breached the Instruments just after receipt of the Funds which they never cured, failing to make payments, failing to provide financial information, which IOU accelerated due to the default, filing and serving its prior Georgia suit around October 2019.

28. Debtor then filed his Bankruptcy, admitting the defaulted Loan and insolvency of Business/CEI/VL, of over $1,000,000.00, described JPFI as the 'sole management community

property' of JJS but omitted the transfer of the Helmick Property or other transfers from himself, Business, CEI and VL to JPFI and JJS.

29. Debtor and Business did not intend to repay the Funds, which they did not disclose to IOU, who acted for each other and the other Defendants as to the Funds and the Loan of which Defendants knew, benefitted, consented and ratified.

30. Defendants are jointly and severally liable for the Loan/Instruments, by fulfillment of at least one of the below events with Debtor; who namely:

(a) Acted as agents for each other in obtaining the Loan and the Funds of which they knew, benefitted, consented and ratified.

(b) Operate as or are a partnership, for their same, related business; the Business in which they shared the benefits and liabilities including the Funds.

(c) Owned, operated/conducted Business, as their alter-ego, disregarding its entity, undercapitalizing it per their failure to repay the Loan, as well as other debts, using it as a conduit/instrumentality for personal affairs like obtaining the Fund/evading the Loan, share/co-mingle assets, finances, ownership, and offices

(d) Business lacks an existence separate from Defendants, per their unified interest or ownership, a mere subterfuge to avoid payment of IOU's debt, whose form should be justly disregarded and pierced, with full liability for damages/relief imposed upon them.

(e) Defendants assumed or are liable for the debts/liabilities at issue, the Loan, Instruments and claims, who have a debtor-creditor relationship with IOU including JJS and JPFI, Debtor's successors under the Guaranty.

31. IOU's Instruments attached to all property, assets and/or proceeds of Defendants, including but not limited to the following ones:

6

    (a)    The Fershaw Property, mentioned in the Instruments, which Debtor/JJS owned at the time of the Loan on which IOU cannot presently enforce its security interest per the Bankruptcy.

    (b)    The Helmick Property, which should be substituted for the Fershaw Property in the Instruments, which is not homestead property, not mentioned in Debtor's Bankruptcy, including its transfer to JPFI, while Debtor disclosed other transfers of his property, assets and proceeds in the Bankruptcy. Upon information, Debtor is a beneficiary of or other insider of JPFI.

    (c)    Any UCC-1 by IOU on the Loan, to which all other property, assets, proceeds and interests of the Defendants are subject.

    (d)    Any property, proceeds and assets secured by other loans of Defendants, to which IOU is subrogated of which they ratified.

    (e)    Any Funds used to benefit any Defendant, also subject to the Loan.

    (f)    Any property, assets and proceeds of any Defendant.

32.    Defendants did or conspired to make false, misleading representations or material omissions to IOU, through Debtor/Business, who negligently, knowingly misrepresented and/or failed to disclose to IOU (a) Their collective involvement with the Loan of which they all benefitted (b) they fraudulently induced IOU to close the Loan, which they did not intend to or could not perform, defaulting on the Loan just after the Closing, resulting in Debtor's Bankruptcy, which occurred when IOU sought to resolve the Loan default (c) their intent to hinder, delay and defraud IOU from enforcing the Loan, such as conducting the Wrongful Transfers, including transferring the non-homestead Helmick Property to JJS, through JPFI, just prior to the Loan, undisclosed to IOU, which relied upon Debtor's ownership of this Property and/or the Helmick Property in closing the Loan (d) Business was operated from the Fershaw Property, part of the intended Loan collateral, which they are estopped from disputing.

33. IOU justifiably and reasonably relied on the misrepresentations or omissions of Defendants as honest and accurate in the Loan process and Instruments, inducing and causing IOU to close the Loan and wire the Funds to them, which was damaged by their misconduct.

34. IOU held and/or owned the defaulted Instruments and claims at issue and had standing to enforce them before suit, their principal balance and/or value exceeding $76,000, with attorney's fees as provided by law and their terms.

35. Defendants induced or encouraged IOU to confer the Funds on them per the defaulted Instruments, which they did not intend to satisfy or could not satisfy, of which they benefitted, consented and ratified.

36. IOU provided the Funds to Defendants and/or their agents, expecting repayment, which they appreciated, knew, benefitted, consented and ratified including JJS and JPFI, who are Debtor's successors under the Guaranty.

37. Defendants knew of, accepted and retained the Funds, which they did not reject, should return or compensate, who are otherwise unjustly enriched by the Funds at IOU's expense, retaining the Funds and/or retaining their property, assets and/or proceeds absent IOU's intended senior interest(s) in them.

38. Defendants are indebted to IOU on the Instruments, with fees, costs and charges, of which their property, assets and proceeds are secured as collateral including JJS and JPFI, who are Debtor's successors under the Guaranty.

39. Defendants are liable for each other's acts and omissions as partners, servants, agents, successors, by command, in prosecution of, within their relationship, by which they jointly benefitted and/or ratified including JJS and JPFI, Debtor's successors under the Guaranty.

40. The transfers of the property, assets and proceeds of Debtor, Business, CEI and VL from 2017 2019, including but not limited to those of their funds and the Helmick Property to JJS and JPFI, were intended by Defendants to hinder, delay or defraud its creditors, like IOU, of which they consented, benefitted and ratified JPFI [the Wrongful Transfers].

41. Debtor, Business, CEI and VL received no consideration or reasonably equivalent value for the Wrongful Transfers to JJS and JPFI, of which they consented, benefitted and ratified.

42. The assets of Debtor, Business, CEI and VL were insufficient to fulfill their obligations, such as IOU's debt, particularly after the Wrongful Transfers to JJS and JPFI, of which they consented, benefitted and ratified.

43. The Wrongful Transfers to JJS and JPFI wrongfully precluded the ability of Debtor, Business, CEI and VL to satisfy their debts, such as that of IOU, of which they knew and ratified.

44. The Wrongful Transfers to JJS and JPFI occurred when they were confidential insiders, officers, directors, shareholders, controllers or their relatives of Debtor, Business, CEI and VL

45. The Wrongful Transfers to JJS and JPFI occurred within a year prior to IOU's prior suit in Georgia and and/or while Debtor and Business were otherwise threatened with suit for its unpaid debt, such as that of IOU, of which Defendants knew, consented, benefitted and ratified.

46. The Wrongful Transfers by Debtor and Business to JJS and JPFI were for substantially of their assets. of which the Defendants knew, consented, benefitted and ratified.

47. The Wrongful Transfers by Debtor and Business to JJS and JPFI, were concealed, of which IOU, their creditor, was unaware, as Defendants knew, consented, benefitted and ratified.

48. Debtor and Business were insolvent at the time of the Wrongful Transfers of their property, assets and proceeds to JJS and JPFI, or became insolvent per the transfers, of which these Defendants consented, benefitted and ratified.

49. The fair value of the assets of Debtor and Business were less than then their debts at the time of the Wrongful Transfers of their property, assets and proceeds to the Defendants, such as the Helmick Property to JJS and JPFI, of which they knew, consented and benefitted.

50. Debtor and Business was not paying its debts as they came due, at the time of the Wrongful Transfers to JJS and JPFI which they knew, consented and benefitted.

51. The Wrongful Transfers to JJS and JPFI occurred shortly before, during and after Debtor and Business incurred substantial debt, such as that of IOU, of which the Defendants knew, consented, benefitted and ratified.

52. The Wrongful Transfers to JJS and JPFI were made to them by Debtor to hinder, delay and defraud the creditors of Business and Debtor, such as IOU of which Defendants knew, consented, benefitted and ratified.

53. All conditions precedent to suit occurred, were fulfilled, waived and/or their occurrence and/or fulfillment was unnecessary and/or futile.

## COUNT I:  DECLARATORY, EQUITABLE AND RELATED RELIEF AS TO ALL DEFENDANTS

54. ¶¶ 7-53 are incorporated.

55. Defendants are jointly liable for the Funds, whose property, assets and proceeds, such as the above Properties, are subject to the Instruments, procured by their conspiracy but seek to wrongfully evade the Loan per the Wrongful Transfers.

56. The inequitable or fraudulent misconduct of Defendants requires inclusion of them, their property, assets and proceeds from the Instruments, who induced IOU to make the Loan, to which they are subject.

57.     The misconduct of Defendants permits them to wrongfully retain the Funds at IOU's expense, with their property, assets and proceeds, absent IOU's intended secured interest in them, for which IOU has no adequate legal remedy.

58.     The Instruments are to bind all recipients and beneficiaries of the Funds, Defendants, whose property, assets and proceeds are to secure the Loan, who consented to, benefitted from and ratified the Loan, obtaining the Funds including JJS and JPFI who are Debtor's successors under the Guaranty.

59.     The Instruments are intended as and constitute a security interest in all property, proceeds and assets of Defendants, reasonably identified and described as collateral, of which they knew, consented, benefitted and ratified, for which equitable relief will not prejudice them.

60.     All Defendants and their property, assets and proceeds were accidentally, mistakenly and/or wrongfully omitted from the Instruments, contrary to their intended purpose, to which they consented, benefitted and ratified, but now seek to evade, such as JJS and JPFI who are Debtor's successors under the Guaranty, who conducted the Wrongful Transfer with Debtor, including the deed to them of the Helmick Property.

61.     The omission of all Defendants in the Instruments unjustly impedes their enforcement, whose property, assets and proceeds will not be completely secured per their misconduct, such as the Wrongful Transfers, which IOU has no adequate legal remedy.

62.     The Wrongful Transfers and other misconduct requires inclusion of all Defendants and their property, assets and proceeds in the Instruments, including IOU's inclusion in the title to the Helmick Property, as Defendants induced IOU to make the Loan, to which they are subject, which is subrogated into any loans it satisfied.

63. Per 28 U.S.C. § 2201, *et seq.*, and applicable law, IOU requests the Court declare, establish and reform its Instruments to bind Defendants as jointly liable for the Loan, a security interest in their property, assets and proceeds, including JJS and JPFI who are Debtor's successors under the Guaranty, which is subrogated into any Prior Loans, invalidate Debtor's deed to JJS and JPFI of the Helmick Property, vesting its title in IOU, grant just relief.

64. Alternatively, IOU demands judgment as to the Defendants for compensatory, consequential, special, nominal, punitive damages for their misconduct and all just relief.

### COUNT II:  BREACH OF INSTRUMENTS AND RELATED RELIEF AS TO ALL DEFENDANTS

65. ¶¶ 7-53 are incorporated.

66. Defendants consented to, benefitted from and ratified the Instruments, accepting the Funds, who are liable as co-guarantors and/or successors of Debtor under the Guaranty.

67. Defendants breached the Instruments, failed to make payments and did not otherwise comply with their terms, which are now due.

68. IOU accelerated the principal balance of its defaulted Instruments of which Defendants were given notice and/or notice was not required and/or is futile and the Instruments provide for payment of IOU's attorney's fees and costs.

69. Defendants are notified IOU may enforce and invoke the fees provisions of the Instruments against them, who will be indebted for IOU's fees/costs, unless all principal, interest and charges due under IOU's Instruments are paid within 10 days after service of this Complaint.

70. IOU demands judgment against Defendants for damages under the Instruments in the principal sum of at least $76,000.00, attorney's fees, interest, costs and all just relief.

### COUNT III:  BREACH OF FIDUCIARY DUTY OF TRUST TO CREDITOR AND RELATED RELIEF AS TO DEFENDANTS

71. ¶¶ 7-53 are incorporated.

72. Business, VL and CEI are presumed insolvent per their default on the Loan and other debts, was or in the zone of insolvency by the time of Debtor's Bankruptcy.

73. Debtor rendered Business, VL, CEI and himself insolvent, incurring debt which they could not repay, such conducting the Wrongful Transfers with JJS and JPFI.

75. Debtor owed fiduciary duties to creditors of Business, such as IOU, as an officer and director of Business, VL and CEI to conserve and manage their property, assets and proceeds in trust to benefit their creditors, such as IOU, at least post-insolvency, which he was not to convert/give away, precluding collection of IOU's debt, benefitting him at IOU's expense.

76. Debtor breached his fiduciary duties to IOU by misusing the property, assets and proceeds of Business, VL and CEI, at least after their insolvency to preferentially benefit his interests, dishonestly, in bad faith (a) paying himself from them for worthless services (b) conducting the Wrongful Transfers to JJS and JPFI and otherwise wrongfully transferring his property, assts and proceeds to them with those of Business, VL and CEI (c) who bankrupted and precluded Business, CEI and VL from satisfying these debts, such as the Loan (d) lying to IOU as to the nature and extent of the debts of Business, VL and CEI, to acquire the Funds, in violation of the Instruments, (e) also constituting fraudulent transfers per Tex. Bus. & Com Code § 24.005, to hinder, delay or defraud IOU in enforcing its Loan and (f) constructively fraudulent transfers per Tex. Bus. & Com Code § 24.006, leaving Business, VL and CEI incapable of satisfying the debts, such as the Loan.

77. Debtor's misconduct wrongfully precluded satisfaction of the Loan by Business, VL and CEI, whose misuse of them impaired IOU's Security Agreement in them.

13

78.     The other Defendants knowingly participated Debtor's breach of fiduciary duty, and misconduct against IOU, as a creditor of Business, CEI and VL (a) to whom Debtor had a fiduciary duty (b) all Defendants knew of Debtor's fiduciary duty (c) knowingly participated in Debtor's breach of the fiduciary relationship, such as JJS and JPFI, who participated in Debtor's misconduct as his partners and insiders of Business, VI and CEI, including the Wrongful Transfers, precluding satisfaction of the Loan, who are also liable for this misconduct.

79.     The misconduct of Defendants was fraudulent, malicious and grossly negligent, requiring relief to punish and penalize them and deter future misconduct.

80.     Per Tex. Bus. & Com. Code § 24.001 *et seq.*, Tex. Civ. Prac. & Rem. Code § 41.001, *et seq.*, and applicable law, IOU demands compensatory, consequential, special, nominal and exemplary damages as to Defendants for their torts, its attorney's fees, costs, equitable remedies and all just relief.

### COUNT IV:  QUANTUM MERUIT/UNJUST ENRICHMENT AND RELATED RELIEF AS TO DEFENDANTS

81.     ¶¶ 7-53 are incorporated.

82.     Defendants induced and/or encouraged IOU to confer the Funds upon them through Debtor and Business, of which they knew, benefitted, consented and ratified.

83.     IOU provided the Funds to Defendants by Debtor and Business expecting repayment, of which they knew, benefitted, consented and ratified.

84.     Defendants knew of and accepted the Funds which should be repaid, who are otherwise unjustly enriched by them at IOU's expense.

85.     Defendants are indebted to IOU for the Funds.

86.     IOU demands judgment against the Defendants for the Funds, costs and just relief such as its equitable remedies.

## COUNT V:  EQUITABLE LIEN/EQUITABLE MORTGAGE
## AND RELATED RELIEF AS TO DEFENDANTS

88. ¶¶ 7-53 are incorporated.

89. The property, assets and proceeds of Debtor and Business were to secure the Loan(s) per the Security Agreement(s) as a charge upon the property, assets and proceeds of Bliss, such as the Helmick Property, including any proceeds of its rent and/or sale and/or properties purchased with same and/or is implied upon them, based on their relations and circumstances, of which Defendants consented, benefitted and ratified particularly JJS and JPFI

90. Debtor and Business inequitably or fraudulently induced IOU to provide the Funds, and enter into the Loan(s), without intending to satisfy the Loan, satisfaction of which was wrongfully precluded, per the Wrongful Transfers, in which JJS and JPFI participated with the breach of fiduciary duty Debtor and Business, acquiring their alleged invalid interest in the Helmick Property subject to, with notice and knowledge of IOU's interest in that property.

91. Defendants accepted and retained the Funds as secured debt, wrongfully retain their property, assets and proceeds, absent IOU's intended secured interest in them, such as those acquired by the Wrongful Transfers, such as the Helmick Property and any proceeds of its rent and/or sale and/or properties purchased with same, for which IOU has no adequate legal remedy.

92. An equitable lien and/or mortgage to secure IOU's debt was created by the Instruments as a charge upon the property, assets and proceeds of Defendants, including those resulting from the Wrongful Transfers,  such as the Helmick Property, including any proceeds of its rent and/or sale and/or properties purchased with same and/or is implied upon them, based on their relations and circumstances, to prevent their unjust enrichment, in which the interests of Defendants are subject to and subordinate to those of IOU.

93.     Per 28 U.S.C. § 2201 *et seq* and applicable law, IOU requests the Court declare and impose an equitable lien/mortgage on all property, assets and proceeds of Defendants, including those resulting from the Wrongful Transfers, such as the Helmick Property, including any proceeds of its rent and/or sale and/or properties purchased with same, in which the interests of the Defendants are subject to and subordinate to those of IOU, in a sum at least equal to the Loan, relating back to its execution/origination, awarding all just relief.

### COUNT VI:  CONSTRUCTIVE TRUST AND RELATED RELIEF AS TO ALL DEFENDANTS

94.     ¶¶ 7-53 are incorporated.

95.     The property, assets and proceeds of all recipients of the Funds, such as all Defendants, including JPFI and JJS were to secure the Loan, per the Instruments, of which they benefitted, consented and ratified but wrongfully preclude their performance.

96.     Debtor and Business inequitably or fraudulently induced IOU to provide the Funds and enter into the Loan, without intending to satisfy the debt, which they wrongfully precluded, per the Wrongful Transfers, in which JJS and JPFI participated with the breach of fiduciary duty of Debtor and Business, acquiring their alleged invalid interest in the Helmick Property subject to, with notice and knowledge of IOU's interest in that property.

97.     Defendants knew of, accepted and retained the Funds as secured debt, who wrongfully retain their property, assets and proceeds, absent IOU's intended secured interest in them, such as the Helmick Property, including any proceeds of its rent and/or sale and/or properties purchased with same, for which IOU has no adequate legal remedy.

98.     A constructive trust to satisfy the Instruments is implied on all property, assets and proceeds of Defendants, such as those resulting from the Wrongful Transfers, including the

16

Helmick Property, to remedy their misconduct and avert unjustly enriching them, in which they can enjoy no beneficial interest contrary to equity.

99. Per 28 U.S.C. § 2201 *et seq* and applicable law, IOU requests the Court declare and impose a constructive trust on all property, assets and proceeds of Defendants, including those resulting from the Wrongful Transfers, such as the Helmick Property, including any proceeds of its rent and/or sale and/or properties purchased with same, in which the interests of the Defendants are subject to and subordinate to those of IOU, in a sum at least equal to the Loan, relating back to its execution/origination, awarding all just relief..

## COUNT VII: JUDICIAL FORECLOSURE AND RELATED RELIEF AS TO DEFENDANTS

100. ¶¶ 7-53 are incorporated.

101. Defendants breached IOU's Instruments, failed to satisfy them or comply with them, which are a secured interest in their property, assets and proceeds, such as those resulting from the Wrongful Transfers, including the Helmick Property, in which JJS and JPFIL acquired their alleged invalid interest subject to, with notice and knowledge of IOU's interest in it.

102. The interests of Defendants their property, assets and proceeds, such as those resulting from the Wrongful Transfers, including the Helmick Property, are subject to that of IOU under the Loan, which secured or were intended to secure that Property and its proceeds.

103. Per 28 U.S.C. § 2201, § 2001 *et seq* and applicable law, IOU requests the Court declare, establish and judicially foreclose its secured interest in all property, assets and proceeds of Defendants their property, assets and proceeds secured by the Loan and resulting from the Wrongful Transfers, such as the Helmick Property, its fixtures, appurtenances, rents, contents and insurance for the sums due under the Instruments, interest, charges, expenses, costs and fees, taxes and abstracting, in which all other claims and interests are inferior, subordinate, barred,

17

foreclosed, quieted to all right, title, interest and equity of redemption, awarding post-sale possession to IOU or any other purchaser at sale.

104.    Defendants are not minors or adjudged incompetent, were not in the military for the last 30 days and are not subject to protection under 50 U.S.C. § 3901, *et seq.*

## CERTIFICATE OF SERVICE

I certify a precise copy of this document was filed ECF on the below date, sending ECF notice to defense counsel of record for Defendants JPFI and JJS and/or was mailed by U.S. First Class Mail to Defendants Voltata TP and Current on their returns of service [Doc 7-8] which will be served on Defendant Voltata LLC.

Respectfully submitted this 15th day of December 2020.

By:     */s/Paul G. Wersant*
Paul G. Wersant
Georgia Bar No. 748341
3245 Peachtree Parkway, Suite D-245
Suwanee, Georgia 30024
Telephone: (678) 894-5876
Email: pwersant@gmail.com
Attorney for Plaintiff IOU
File No. 104230